Case 1:23-cv-00156   Document 25   Filed on 08/22/24 in TXSD   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
August 22, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CHRISTINE SAMANTHA NERI, | § | |
|  Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-156 |
| | § | |
| CITY OF SAN BENITO, TEXAS & | § | |
| OFFICER RENDELL STANSBURY, | § | |
|  Defendants. | § | |

### REPORT AND RECOMMENDATION TO GRANT
### CITY OF SAN BENITO'S MOTION TO DISMISS

**I. Synopsis**

Dogs bite. Police dogs too. Here, a newly minted police dog bit its old caretaker turned canine officer trainer. This incident happened when the trainer and the dog's police handler were taking the dog for follow-up after serious medical treatment. Before entering the veterinary clinic, the trainer decided to inspect the dog's ear before muzzling him. However, it was the trainer's ear that ultimately suffered damage. The trainer now sues the city and officer for Constitutional violations under 42 U.S.C. § 1983 and for state law violations pursuant to the Texas Tort Claims Act. Finding the trainer has not stated a claim for relief, this court recommends granting the city's motion to dismiss as to the federal law claims and declining to exercise jurisdiction on the trainer's state law claims.

**II. Jurisdiction**

This court retains jurisdiction of this § 1983 action pursuant to 28 U.S.C. § 1331, federal question jurisdiction. This court recommends the District Court decline to exercise supplemental jurisdiction under 28 U.S.C. §1367 over the Plaintiff's state law claims.

**III. Standard of Review under FRCP 12(b)(6) – Failure to State a Claim**

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. *Id.* at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 735 (5th Cir. 2019). All well-pled facts must be viewed in the light most favorable to the plaintiff. *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan,* 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal for failing to state a claim upon which relief can be granted is a dismissal on the merits and with prejudice. *Memon v. Allied Domecq QSR*, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

## IV. Background

### A. Factual History

At all times relevant to this case, Plaintiff Christine Samantha Neri ("Neri") was a trained and licensed canine trainer and handler. Dkt. No. 15, p. 2. In fact, her father's canine training business, where Neri also worked, maintained a professional relationship with the Defendant City of San Benito, Texas ("City of San Benito") for over ten years, training their canines and handlers. *Id.*

Sometime in 2022, the City of San Benito obtained a police dog, "Greg," from Neri. Dkt. No. 15, p. 2. Greg had recently been "brought down from Chicago, Illinois, after having bitten a relative of its handler there." *Id.* Both Neri and her father were assisting in training Greg to work for the City of San Benito as a police dog. *Id.* at 4. Greg had previous training as a patrol dog. *Id.* at 3. As part of their training, Greg lived with Neri and her father for a time. *Id.* Defendant Officer Rendell Stansbury ("Stansbury") was selected to receive Greg as a canine partner. *Id.* The complaint alleges Stansbury was not initially trained as a canine handler with the San Benito Police Department, and "his limited training

experience in the use of police canines came by and through the training provided him by [Neri] and her father." *Id.* at 3-4.

Approximately one week into his training with Stansbury, Greg developed physical issues with his paw and required medical intervention. Dkt. No. 15, p. 4. Ultimately, amputation of part of his paw was necessary. *Id.*

On or about August 5, 2022, Stansbury transported Greg in a police vehicle to a local veterinary clinic for follow-up care after the amputation. Dkt. No. 15, p. 4. Neri met Stansbury and Greg at the clinic for the appointment. *Id.* When Stansbury removed Greg from the vehicle, Neri noticed that Greg was unmuzzled and on a long leash. *Id.* Neri alleges this to be in contravention of the procedures and protocols for proper handling of canines. *Id.* Neri approached Greg to place a muzzle around his snout. *Id.* On her approach, she smelled an odor emanating from Greg's ear and brought herself closer to him for further inspection *Id.* Greg lunged, "attacking her [Neri's] face." *Id.*

Immediately following this incident, two City of San Benito police officials, Lt. Michael Cortez[1] and Chief Mario Perea, arrived at the scene where Neri was receiving care. Dkt. No. 15, p. 5. Neri alleges she and her father were separately advised by the city officials that the City of San Benito would cover incident-related medical expenses, because "this happened on our watch." *Id.*

Ultimately, because of this incident, Neri sustained injuries to the right side of her face where a piece of her right ear was removed. Dkt. No. 15, p. 5. She received no coverage or compensation from the City of San Benito for the injury. *Id.* at 6.

The complaint alleges Neri was an "employed contractor … injured in the course and scope of her employment agreement" with the City of San Benito. Dkt. No. 15, p. 10. Neri complains that Stansbury acted with deliberate indifference and/or reckless disregard for the policies and procedures related to canine handling. *Id.* at 6-7. It further alleges that the City of San Benito failed to properly supervise its agents, employees and officers regarding the protocols required for public canine handling. *Id.* at 8. More specifically,

---

[1] This individual was elsewhere identified as Captain Michael Cortez. Dkt. No. 15, p. 8.

the complaint alleges that the City of San Benito, "either had no policies, practices or customs to ensure that the canine training was followed, or rather, failed to implement and adhere to those policies." *Id.* Neri further pleads constitutional violations by the City of San Benito under the Due Process and Equal Protection Clauses and negligence claims under the Texas Tort Claims Act. *Id.* at 9-11.

### B. Procedural History

On October 25, 2023, Plaintiff Christina Samantha Neri filed her Original Complaint against Defendants, City of San Benito, Texas and Officer Rendell Stansbury. Dkt. No. 1.

On October 31, 2023, the court issued an Order of Case Management. Dkt. No. 4.

On November 17, 2023, Defendant City of San Benito timely filed their Motion to Dismiss, raising issues regarding the sufficiency of the Plaintiff's pleadings. Dkt. No. 8. On November 22, 2023, Defendant Stansbury filed his Motion to Dismiss, invoking the protections of qualified immunity. Dkt. No. 9.

On December 13, 2023, the Plaintiff filed her First Amended Original Complaint. Dkt. No. 15. Defendants then renewed their motions to dismiss. Dkt. Nos. 16, 17.

On December 27, 2023, the Court dismissed as moot the Defendants' first motions to dismiss. Dkt. No. 18. Consistent with that order, the Court construes Plaintiff's First Amended Original Complaint (Dkt. No. 15) as the operative complaint and takes up the renewed dismissal motions (Dkt. Nos. 16, 17) for consideration.

On January 5, 2024, the Plaintiff filed her responses to the Defendants' renewed motions to dismiss. Dkt. Nos. 19, 20. Defendants timely filed their reply briefs. Dkt. Nos. 21, 22.

In keeping with the Court's Order of Case Management, the parties filed their Joint Discovery Plan under FRCP 26(f). Dkt. No. 23. This court then issued an order staying discovery and delaying a scheduling order until the resolution of the pending dismissal motions. Dkt. No. 24.

## V. Applicable Law

### A. 42 U.S.C. § 1983

As relevant here, 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.*

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). The plaintiff must support their claim with specific facts and may not base their claim solely on conclusory allegations. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995).

### B. *Monell* Claim under Section 1983 - Municipal Liability

"Local governments are liable for a policy or custom that causes a constitutional injury under Section 1983," which is colloquially known as a *Monell* claim. *Austin v. City of Pasadena, Texas*, 74 F.4th 312, 332 (5th Cir. 2023). To establish municipal liability under Section 1983, a plaintiff generally must identify an official policy or custom that caused constitutional injury. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847-48 (5th Cir. 2009). "A municipality cannot be held liable under § 1983 on a theory of *respondeat superior*." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). Accordingly, a municipality can be

subjected to civil liability only if the allegedly illegal conduct is "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Robinson v. Hunt Cty., Texas*, 921 F.3d 440, 449 (5th Cir. 2019).

"Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 346 (5th Cir. 2017) (cleaned up). These elements "are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

The first element, an official policy or custom, may be proved through either a policy "officially adopted and promulgated" by the municipality or an official with policy making authority," or "persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute of custom that fairly represents municipal policy." *Burge v. St Tammany Parish (Burge II),* 336 F.3d 363, 369 (5th Cir. 2003). Less commonly, a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable." *Brown v. Bryan County,* 219 F.3d 450, 462 (5th Cir. 2000) (alteration in original).

The second element requires the identification of a policy maker and proof of that policymaker's actual or constructive knowledge of the policy or custom. *Fennell v. Marion Independent School Dist.,* 804 F.3d 398, 413 (5th Cir. 2015) (quoting *Johnson v. Moore,* 958 F.2d 92, 94 (5th Cir. 1992)). The third element requires that a plaintiff show either that the policy itself was unconstitutional or that it was adopted with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow." *Liggins v. Duncanville,* 52 F.4th 953, 955 (5th Cir. 2022) (internal citation omitted). Municipalities do not have an affirmative obligation to have policies which prevent constitutional torts;

they have an obligation not to maintain policies which create or condone constitutional torts. *Thompson v. Upshur Cty., Texas*, 245 F.3d 447, 462 (5th Cir. 2001).

### C. *Monell* Claim under Section 1983 – Failure to Supervise

A municipality's failure to supervise or discipline its employees can serve as a basis for liability under 42 U.S.C. § 1983. *See Deville v. Marcantell,* 567 F.3d 156, 170-71 (5th Cir. 2009). On a claim for municipal liability and failure to supervise, the plaintiff "must show that (1) the supervisor … failed to supervise … the subordinate official; (2) a causal link exists between the failure to … supervise and the violation of the plaintiff's rights; and (3) the failure to … supervise amounts to deliberate indifference." *Livezey v. City of Malakoff*, 657 Fed. Appx. 274, 278 (5th Cir. 2016) (internal citations omitted). Standards applied to a Section 1983 claim for failure to supervise or train is like the standards applied to claims of municipal liability. *Valle v. City of Houston,* 613 F.3d 536, 544 (5th Cir. 2010) (citing *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005)). The Supreme Court has also warned that municipal liability "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Fifth Circuit has stated that failure to train is "a notoriously difficult theory on which to base a *Monell* claim." *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023). The Court notes that "a failure-to-supervise claim is evaluated in the same way as a failure-to-train claim." *Trammell v. Fruge*, 868 F.3d 332, 344 n 11 (5th Cir. 2017).

To succeed on a claim that a municipality is liable for failing to supervise or train an employee, a plaintiff must plead facts plausibly establishing "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas Cnty., Texas,* 948 F.3d 281, 285 (5th Cir. 2020) (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).

As to the first element – the existence of inadequate training – the plaintiff can meet this standard "by alleging facts related to the locality's actual training program." *Speck Wiginton*, 606 Fed. App'x 733, 736 (5th Cir. 2015). The plaintiff cannot simply ask the

Court "to make the inference that a single alleged incident of misconduct means officers are inadequately trained." *Id.*

As to the second element – that the municipality acted with deliberate indifference – "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Parker v. LeBlanc*, 73 F.4th 400, 402 (5th Cir. 2023). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (quoting *Connick*, 563 U.S. at 62).

The Supreme Court has left open "the possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations," by demonstrating "that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). This possibility has been referred to as the "single incident exception." *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 312 (5th Cir. 2023). The hypothetical example given by the Supreme Court was that if a municipality gave its officers no training at all on the use of deadly force and an untrained officer used deadly force without justification, the decision to forego training would be so derelict that it would constitute deliberate indifference. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, n. 10 (1989). In those instances, plaintiffs "must show that 'in light of the duties assigned to specific officers or employees the need for more or different training [or supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Skinner v. Ard*, 519 F.Supp 3d 301, 314 (M.D.La. 2021) (quoting *Valle*, 613 F.3d at 547) (quoting *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197). The Fifth Circuit has stated that the single incident exception "is extremely narrow, and as an exception to the pattern requirement, it is generally reserved for those cases in which the government actor was provided no training whatsoever." *Edwards*, 70 F.4th at 312–13 (cleaned up).

## VI. Analysis

Neri alleges the City of San Benito failed to supervise its officer to ensure compliance with the protocols for canine handling, leading to Neri's injuries. Dkt. 15, p. 8. Neri further alleges that the City of San Benito had no polices, practices, or customs to monitor compliance with canine handling protocols, failed to implement those policies, or had in place a policy fostering misconduct. *Id.* Neri also complains the City of San Benito violated her due process rights under the Fourteenth Amendment of the United States Constitution and denied her equal protection under the law after the incident that caused her injuries. Dkt. 15, p. 9-10. Lastly, Neri pleads a violation of the Texas Tort Claims Act for acts of negligence by the City of San Benito and its officer. Dkt. 15, p. 10-11.

The City of San Benito argues that Neri's claims brought under Section 1983 are mere "conclusory assertion" made "vaguely" and "generically." Dkt. No. 16, p. 3. With respect to all her claims, the City of San Benito argues that Neri's complaint is "insufficient for purposes of pleading requirements." Dkt. N. 16, p. 3.

Neri's allegations, even when taken as true, do not rise to the level of stating a claim for municipal liability against the City of San Benito and should be dismissed. The Court finds Neri's claims fail on a variety of fronts: (1) failure to plead with specificity how the City of San Benito's training program is defective[2] (2); failure to demonstrate deliberate indifference on the part of the City of San Benito in their alleged failure to train or supervise; (3) failure to allege a pattern of similar violations; and (4) failure to show any violation of a constitutionally protected right.

### A. Federal Claims

#### 1. § 1983 *Monell* Claim – Failure to Supervise

Neri alleges that the City of San Benito failed to supervise its officer who then failed to exercise safe handling when working with a police dog. Neri claims in the alternative there was no policy, a bad policy or a policy of police dog handling that was never

---

[2] Plaintiff Neri maintains that she herself is a part of the training program.

implemented and which resulted in her injuries.[3] Neri fails to state a claim upon which relief may be granted against the City of San Benito for failure to supervise.

To succeed of this claim, a plaintiff must plead facts showing that (1) a supervisor failed to supervise the subordinate, (2) there is a causal link between the lack of supervision and the violation of the plaintiff's right and (3) the failure to supervise amount to deliberate indifference. *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009). Neri has not met these elements.

As to the failure to supervise the subordinate Stansbury under the first element, Neri's operative complaint states, "[c]ommanding officers, including but not limited to Captain Michael Cortez and Chief Mario Perea, observed the training received by Defendant Stansbury, in part, to ensure that said policies, practices and training were followed while on duty in the field." Dkt. No. 15, p. 8. Moreover, Neri's pleadings instruct the court that "[i]t must be noted that [Stansbury's] limited experience in the use and handling of police canines came by and through the training provided him by Plaintiff and her father." Dkt. No. 15, pp. 3-4. These statements directly contradict Neri's allegation that the City of San Benito failed to supervise its police officers, leading to the violation of her constitutional right. Neri alleges no facts to show that Stansbury's supervisors were aware of any inadequacy in the training, training which was conducted by Neri, such that a lack of supervision of compliance with the training or the inadequacy of the training itself led to her injury.

Even if the Court assumes under element two that the City of San Benito's supervisory officials did not supervise Stansbury and the lack of supervision resulted in the alleged injuries, Neri has not shown that the failure to supervise amounted to deliberate indifference, the necessary third element.

---

[3] In her complaint, Neri alleges Stansbury failed to follow proper canine handling policies and procedures. The court was not provided a copy of these policies. As such, the court is unable to ascertain whether said policy is the result of Neri's training on police dog handling or whether it represents an officially adopted and promulgated policy of the City of San Benito. Further, Neri does not claim a pattern of improper dog handling procedures equivalent to official policy such that it fairly represents municipal policy.

The Fifth Circuit recognizes that a showing of deliberate indifference requires a pattern of similar violations that put the City of San Benito on notice that its supervision was inadequate. *Estate of Davis ex rel McCully v. City of North Richland Hills*, 406 F.3d 375,381-83 (5th Cir. 2005); *Wilson v. Baucom,* 2023 WL 4288350, at *5 (5th Cir. June 30, 2023). Neri pleads no facts showing that any other employee or general member of the public has been injured by any police dog from the City of San Benito Police Department.

To this fact, Neri argues that the case remains in the early stages, and she would not have access to any 'policy statement' or 'prior instance' where a person's due process rights were violated, establishing the requisite pattern to escape the application of the narrow single incident exception. District courts throughout the Fifth Circuit have held that while a plaintiff must do more than baldly restate the elements of municipal liability, "only minimal factual allegations should be required at the motion to dismiss stage," given that many of the details would only be available through discovery. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011); *Alexander v. City Police of Lafayette*, 2021 WL 4396016, at *8 (W.D. La. Sept. 24, 2021); *Valadez v. City of San Antonio*, 2022 WL 1608016, at *11 (W.D. Tex. May 20, 2022); *Shelton v. Bonham Indep. Sch. Dist.*, 2018 WL 2236924, at *3 (E.D. Tex. May 16, 2018). Neri does allege she and her father have a long-standing, ten-year relationship with the City of San Benito providing canine training to police dogs and their officers/handlers. This relationship as pled by Neri contradicts her allegation that she is not able to provide even minimal facts to the court of other constitutional violations by the City of San Benito's police dogs as she and her father are pled as the providers of the canines and their handler training.

Consequently, her claim must then arise under the single incident exception. *See City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). To prevail on under the single incident exception, Neri must plead the supervision, which she pleads was conducted under the watchful eye of City of San Benito Police Department officials Lt. Cortez and Chief Perea, was so inadequate or different supervision was obviously needed, that it would likely lead to a constitutional violation. *Id* at 390. Under *Canton*, the supervision plead by Neri does not raise facts claiming the supervision by Lt. Cortez and Chief Mario Perea rises to

the level of a qualifying single incident exception to the deliberate indifference required to hold the City of San Benito liable for Neri's injuries.

### 2. § 1983 – Equal Protection under the 14th Amendment

Neri claims that she was denied equal protection under the law when the City of San Benito denied her medical benefits while she was "serving as an employed contractor" and acting within the course and scope of her employment agreement. Dkt. No. 15, p. 10. She further alleged that denial of the medical coverage is discriminatory and highlights disparate treatment between herself and similarly situated individuals. Dkt. No. 15, p. 10.

The City of San Benito argues that Neri's claims fail on the pleadings. Dkt. No. 16, p. 8. The City of San Benito's arguments are as follows: (1) the claim fails for the same reasons the *Monell* claims fail, (2) plaintiff has identified no policymaker responsible for the alleged unconstitutional conduct, (3) plaintiff has failed to plead a statute by which she was treated differently, (4) plaintiff has failed to show she belongs to a class entitled to protection, and (5) public employment, even viewed as an independent contract, precludes the plaintiff from bringing a 'class of one' equal protection claim. Dkt. No. 16, pp. 8-10.

For the following reasons, the court finds Neri fails to state an equal protection claim for relief.

To properly plead their claim under the Equal Protection Clause of the 14th Amendment, a Section 1983 plaintiff must prove that a (1) state actor (2) intentionally discriminated against her (3) because of her membership in a protected class and that (4) no rational basis for the difference in treatment exists. *Stoneburner v. Sec'y of the Army,* 152 F.3d 485, 490 (5th Cir. 1998). If an equal protection claim does not involve a suspect class or a fundamental right, courts review state action using a rational basis test. *See Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001). "Under the rational-basis test … the plaintiff bears the burden of showing that there is no conceivable rational basis." *Newman Marchive Partner v. Hightower,* 349 F. App'x 963, 966 (5th Cir. 2009) (citing *Bd. Of Trs. Of Univ. of Ala. v. Garrett,* 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). A plaintiff alleging discrimination on grounds other than membership in a protected group may still prevail on an equal protection claim under a "class of one" theory."

Here, Neri claims she was treated differently by the City of San Benito through their denial of medical coverage after Greg, the canine officer, injured her. She identifies a state actor as Captain Michael Cortez, Chief Mario Perea, or City Manager Manul [*sic*] de la Rosa, and she identifies a fundamental right to equal protection under the law. Dkt. No. 15, p. 10. She appears to claim that she is an "employed contractor." Dkt. No. 15, p. 10. Further, she states that the City of San Benito offers no cognizable or justifiable reason for their lack of action in providing medical benefits. Dkt. No. 15, p. 10. Instead, she relies on her conversation with Cortez and Perea immediately after the incident during which alleges she was told "all of her medical bills would be covered" as "this happened on our watch."[4] Dkt. No. 15, p. 5.

Issues with Neri's allegations center themselves around her status as a member of a particular class. She does not claim to be a member of a protected class. Rather, she draws parallels between herself and City of San Benito employees to identify similarly situated individuals. However, her pleadings do not otherwise identify her as a City of San Benito employee. Therefore, she must be an independent contractor; this being consistent with her acknowledgment of some "employment agreement" with the City of San Benito. Dkt. No. 15, p. 10. As an independent contractor, she would be entitled to the benefits of the contract and would then seek relief under a breach of contract theory as opposed to the equal protection claim currently sought. Finally, Neri fails to qualify for relief under a "class of one" theory of liability, because the Supreme Court has previously recognized that relief is "not cognizable in the public employment context" when a plaintiff alleges that she has been treated differently from other similarly situated persons without any rational basis but does not allege that differential treatment was due to membership in a particular class." *Enquist v. Oregon Dept. of Agr.,* 553 U.S. 591, 603 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

---

[4] Plaintiff's pleadings acknowledge that she "presum[es] … Defendant Stansbury and his canine were on duty and in the court and scope of their employment." Dkt. No. 15, p. 6

Given the facts and the relevant legal standards, the court recommends Neri's claims under the Equal Protection Clause be dismissed, because Neri fails to plead a claim for which she is entitled to relief.

### 3. § 1983 – Due Process under the 14th Amendment

Neri also bases her Section 1983 claim on a violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution. Dkt. No. 15, pp. 6-7, 9. "The touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (emphasis in original). Neri's due process claim against the City of San Benito contains only the invocation of due process without further factual description. In her claim, she does not point to any arbitrary action taken the City of San Benito. Even if the court construes Neri's claim as arbitrary discrimination against her for failure to reimburse medical expenses, this claim fails on the same basis as her equal protection claim and is not a proper due process claim under the Fourteenth Amendment. Further, Neri does not point to a deliberate decision on the part of the City of San Benito to deprive her of right to liberty.[5]

Given the lack of demonstration of how the City of San Benito acted arbitrarily or deliberately to violate Neri's right to due process, the court recommends Neri's claims under the Due Process Clause be dismissed, because Neri fails to plead a claim for which relief can be granted.

### B. State Law Claims under the TTCA

The court retains original jurisdiction under 28 U.S.C. § 1331 over Neri's 42 U.S.C. §1983, due process and equal protection claims because they raise federal constitutional and legal questions. The court recommends these claims be dismissed against the City of

---

[5] In her response briefs, Neri notes that it was her liberty interest which was violated when Defendant Stansbury alleged failed to control the police dog. Dkt. No. 19, p. 5; Dkt. No. 20, p. 5.

San Benito for failure to state a claim. If this recommendation is adopted, the only remaining claim is Neri's state law claim under the Texas Tort Claims Act. This case remains at a nascent stage with discovery stayed until resolution of these pending motions to dismiss. Dkt. No. 24.

Pursuant to 28 U.S.C. § 1367(c), a federal court may or may not exercise supplemental jurisdiction over state law claims. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S.Ct. 1862, 173 L.Ed. 2d 843 (2009). "A district court's decision whether to exercise that [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Id* at 639. Applying 28 U.S.C. § 1367(c)(3), because the court recommends the dismissal of all claims over which it had original jurisdiction, the court recommends that the District Court decline to exercise supplemental jurisdiction over the remaining state law claim.[6]

## VII. Recommendation

It is recommended that Defendant City of San Benito's Motion to Dismiss be granted for failure to state a claim upon which relief can be granted as to Neri's federal claims under 42 U.S.C. § 1983. Dkt. No. 16. It is further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff Neri's state law claims in accordance with 28 U.S.C § 1367(c)(3) after dismissing all claims over which the Court has original jurisdiction.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). This Report and Recommendation shall serve as notice of the Plaintiffs' procedural defaults, and the

---

[6] Because the undersigned recommends that the District Court decline to exercise supplemental jurisdiction over the state law claim, the court declines to provide analysis on the motion to dismiss as to Neri's TTCA claim.

objection period shall serve as opportunity to respond to these defects. *Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a *de novo* review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a *de novo* review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on August 22, 2024.

Karen Betancourt.
United States Magistrate Judge