IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CHRISTINE SAMANTHA NERI, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:23-cv-156 |
| | § | |
| CITY OF SAN BENITO, TEXAS, & | § | |
| OFFICER RENDELL STANSBURY, | § | |
|     Defendants. | § | |

### REPORT AND RECOMMENDATION TO GRANT
### OFFICER RENDELL STANSBURY'S MOTION TO DISMISS

**I. Synopsis**

Dogs bite. Police dogs too. Here, a newly minted police dog bit its old caretaker turned canine officer trainer. This incident happened when the trainer and the dog's police handler were taking the dog for follow-up after serious medical treatment. Before entering the veterinary clinic, the trainer decided to inspect the dog's ear before muzzling him. However, it was the trainer's ear that ultimately suffered damage. The trainer now sues the officer for Constitutional violations under 42 U.S.C. § 1983. Finding the trainer has not stated a claim for relief, this court recommends granting the officer's motion to dismiss, because the trainer cannot overcome the officer's qualified immunity.

**II. Jurisdiction**

This court retains jurisdiction of this § 1983 action pursuant to 28 U.S.C. § 1331.

**III. Standard of Review under FRCP 12(b)(6) – Failure to State a Claim**

Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face." *Ferguson v. Bank of New York Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then dismissal is proper. *Id.* at 679.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 735 (5th Cir. 2019). All well-pled facts must be viewed in the light most favorable to the plaintiff. *Schweitzer v. Inv. Comm. of Phillips 66 Sav. Plan,* 960 F.3d 190, 194 (5th Cir. 2020).

Dismissal for failing to state a claim upon which relief can be granted is a dismissal on the merits and with prejudice. *Memon v. Allied Domecq QSR*, 385 F.3d 871, 874 n. 6 (5th Cir. 2004).

## IV.  Background

### A. Factual History

At all times relevant to this case, Plaintiff Christine Samantha Neri ("Neri") was a trained and licensed canine trainer and handler. Dkt. No. 15, p. 2. In fact, her father's canine training business, where Neri also worked, maintained a professional relationship with the Defendant City of San Benito, Texas ("City of San Benito") for over ten years, training their canines and handlers. *Id.*

Sometime in 2022, the City of San Benito obtained a police dog, "Greg," from Neri. Dkt. No. 15, p. 2.  Greg had recently been "brought down from Chicago, Illinois, after having bitten a relative of its handler there." *Id.*  Both Neri and her father were assisting in training Greg to work for the City of San Benito as a police dog. *Id.* at 4. Greg had previous training as a patrol dog. *Id.* at 3. As part of their training, Greg lived with Neri and her father for a time. *Id.* Defendant Officer Rendell Stansbury ("Stansbury") was selected to receive Greg as a canine partner. *Id.* The complaint alleges Stansbury was not initially trained as a canine handler with the San Benito Police Department, and "his limited training experience in the use of police canines came by and through the training provided him by [Neri] and her father." *Id.* at 3-4.

Approximately one week into his training with Stansbury, Greg developed issues with his paw and required medical intervention. Dkt. No. 15, p. 4. Ultimately, amputation of part of his paw was necessary. *Id.*

On or about August 5, 2022, Stansbury transported Greg in a police vehicle to a local veterinary clinic for follow-up care after the amputation. Dkt. No. 15, p. 4. Neri met Stansbury and Greg at the clinic for the appointment. *Id.* When Stansbury removed Greg from the vehicle, Neri noticed that Greg was unmuzzled and on a long leash. *Id.* Neri alleges this to be in contravention of the procedures and protocols for proper handling of canines. *Id.* Neri approached Greg to place a muzzle around his snout. *Id.* On her approach, she smelled an odor emanating from Greg's ear and brought herself closer to him for further inspection. *Id.* Greg lunged, "attacking her [Neri's] face." *Id.*

Immediately following this incident, two City of San Benito police officials, Lt. Michael Cortez[1] and Chief Mario Perea, arrived at the scene where Neri was receiving care. Dkt. No. 15, p. 5. Neri alleges she and her father were separately advised by the city officials that the City of San Benito would cover incident-related medical expenses, because "this happened on our watch." *Id.*

Ultimately, because of this incident, Neri sustained injuries to the right side of her face and a piece of her right ear was removed. Dkt. No. 15, p. 5. She received no coverage or compensation from the City of San Benito for the injury. *Id.* at 6.

The complaint alleges Neri was an "employed contractor … injured in the course and scope of her employment agreement" with the City of San Benito. Dkt. No. 15, p. 10. Neri complains that Stansbury acted with deliberate indifference and/or reckless disregard for the policies and procedures related to canine handling. *Id.* at 6-7. It further alleges that the City of San Benito failed to properly supervise its agents, employees and officers regarding the protocols required for public canine handling. *Id.* at 8. More specifically, the complaint alleges that the City of San Benito, "either had no policies, practices or customs to ensure that the canine training was followed, or rather, failed to implement and

---

[1] This individual was elsewhere identified as Captain Michael Cortez. Dkt. No. 15, p. 8.

adhere to those policies." *Id.* Neri further pleads constitutional violations by the City of San Benito under due process and equal protection and negligence claims under the Texas Tort Claims Act. *Id.* at 9-11.

### B. Procedural History

On October 25, 2023, Plaintiff Christina Samantha Neri filed her Original Complaint against Defendants, City of San Benito, Texas, and Officer Rendell Stansbury. Dkt. No. 1.

On October 31, 2023, the court issued an Order of Case Management. Dkt. No. 4.

On November 17, 2023, Defendant City of San Benito timely filed their Motion to Dismiss, raising issues regarding the sufficiency of the Plaintiff's pleadings. Dkt. No. 8. On November 22, 2023, Defendant Stansbury filed his Motion to Dismiss, invoking the protections of qualified immunity. Dkt. No. 9.

On December 13, 2023, the Plaintiff filed her First Amended Original Complaint. Dkt. No. 15. Defendants then renewed their motions to dismiss. Dkt. Nos. 16, 17.

On December 27, 2023, the Court dismissed as moot the Defendants' first motions to dismiss. Dkt. No. 18. Consistent with that order, the Court construes Plaintiff's First Amended Original Complaint (Dkt. No. 15) as the operative complaint and takes up the renewed dismissal motions (Dkt. Nos. 16, 17) for consideration.

On January 5, 2024, the Plaintiff filed her responses to the Defendants' renewed motions to dismiss. Dkt. Nos. 19, 20. Defendants timely filed their reply briefs. Dkt. Nos. 21, 22.

In keeping with the Court's Order of Case Management, the parties filed their Joint Discovery Plan under FRCP 26(f). Dkt. No. 23. This court then issued an order staying discovery and delaying a scheduling order until the resolution of the pending dismissal motions. Dkt. No. 24.

### V. Applicable Law

#### A. 42 U.S.C. § 1983

As relevant here, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.*

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979). To prevail upon a § 1983 claim a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

### B. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is designed to provide "ample protection" to all government officials except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (emphasis original). "One of the most salient benefits of qualified immunity is protection from pre-trial discovery." *Zapata v. Melson*, 750 F.3d 481, 484-85 (5th Cir. 2014).

If a defendant claims qualified immunity, the burden shifts to the plaintiff to establish that the defendant is not entitled to its protections. *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017). "When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat the claim of immunity." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (cleaned up).

The two-part test for qualified immunity requires the Court to determine: (1) whether the defendants' actions violated the plaintiff's constitutional rights; and (2) whether those rights were clearly established at the time of the defendant's actions. *Pearson v. Callahan*, 555 U.S. 223 (2009). In determining whether the law was clearly established, the Court cannot simply "define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam). Rather, the Court must focus on "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis original).

"Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the motion. It may not permit discovery against the immunity-asserting defendants before it rules on their defense." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022).  If "the pleadings are insufficient to overcome [qualified immunity], the district court *must* grant the motion to dismiss without the benefit of pre-dismissal discovery. Similarly, where the pleadings are sufficient to overcome [qualified immunity], the district court *must* deny the motion to dismiss without the benefit of pre-dismissal discovery." *Id.* at 312 (emphasis original).

## VI.    Analysis

As an initial matter, it is unclear whether Neri sues Stansbury in his individual capacity, official capacity, or both. To the extent she sues Stansbury in his official capacity, the court recommends her claims against him be dismissed as coextensive with the claims against the City of San Benito. This court recommends, in a separate report, dismissal of the claims against the City of San Benito, finding Neri failed to plead sufficient facts to impute municipal liability in a Section 1983 context. Dkt. No. 25.  The Fifth Circuit recognizes that claims under 42 U.S.C. 1983 against a state actor in their official capacity are

functionally duplicative with the claims against the municipality. *See Castro Romero v. Becken,* 256 F.3d 349, 355 (5th Cir. 2001); *see also Flores v. Cameron County, Tex.,* 92 F.3d 258, 261 (5th Cir. 1996). To the extent she sues Stansbury in his individual capacity, the analysis follows below.

Neri maintains Stansbury's actions "shocked the conscience in that he acted with deliberate indifference and/or reckless disregard[2]" causing deprivation of her life, liberty, or property in violation of her constitutional right in the Due Process Clause of the Fourteenth Amendment. Dkt. No. 15, pp. 1, 6; Dkt. No. 19, p. 5. More specifically, Neri argues Stansbury caused her injury when failed to uphold policies and procedures allegedly requiring Greg, the police dog, be kept on a short leash and muzzled when there was a possibility of interactions with the public.

In his Motion to Dismiss, Stansbury pleads qualified immunity. Dkt. No. 17, pp. 3-4. Resultingly, it is Neri who bears the burden of establishing that qualified immunity is inappropriate. In response to Stansbury's motion to dismiss, Neri argues her pleadings overcome Stansbury's claim to qualified immunity. Dkt. No. 19, p. 5. Neri also clarifies that, "the only claim being brought against Defendant, Stansbury, is one under 42 USC § 1983." Dkt. No. 19, p. 6.[3]

Qualified immunity protects government employees from civil liability when their conduct does not violate a clearly established constitutional right. *Pearson,* 555 U.S. 223, 231. In its analysis, the court must consider: (1) whether Neri asserts a clearly established right which (2) was violated by Stansbury's action or inaction. The court is allowed to consider either inquiry in whatever order it so chooses. "[J]udges of the district courts and the courts of appeals are in the best position to determine the order of decision making that will best facilitate the fair and efficient disposition of each case [invoking qualified immunity]." *Pearson,* 555 U.S. 223, 242.

---

[2] Given the relevant legal standards, the court will address Neri's arguments under a "shock the conscience" standard.

[3] As Neri clearly states she is not bringing a claim against Officer Rendell Stansbury under the Texas Tort Claims Act, this court does not address any negligence claim under Texas law against Stansbury as part of his Motion to Dismiss.

Based on the pleadings, Stansbury's conduct does not rise to the level of an unconstitutional action. For the following reasons, the court finds Stansbury is entitled to the protections of qualified immunity.

### A. Clearly Established Constitutional Right

To defeat Stansbury's assertion of qualified immunity and succeed on her due process claim, the court's first inquiry is whether Neri demonstrates a violation of her due process right that was clearly established at the time of the dog bite. *See Elder v. Holloway,* 510 U.S. 510, 512, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344 (1994); *Pearson v. Callahan,* 555 U.S. 223, 244, 129 S.Ct. 808, 823 (2009) (holding the qualified immunity inquiry turns on "the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken"). The court finds that Neri's pleadings are conclusory allegations devoid of the requisite detail to meet the burden as to a clearly established constitutional right owed to Neri.

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). The court may not "define clearly established law at a high level of generality;" Instead, it must focus on the particular conduct alleged. *Mullenix* at 12. "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083, 179 L. Ed. 2d 1149 (2011).

Neri alleges a due process violation of her liberty interest. Dkt No. 15, p. 5. Viewing the facts in the light most favorable to Neri, the court construes Neri's interest as a right to be free from bodily injury at the hands of law enforcement. This, because she alleges Stansbury failed to follow a policy or procedure in handling police dogs resulting in her bodily injury.[4] Here, Neri notes policy and procedure[5] dictated different restraints

---

[4] Defendant Stansbury frames Neri's liberty interest as a right to be free from violation of bodily integrity. Dkt. No. 17, p. 5. Neri appears to accept this categorization of the alleged right. Dkt. No. 19, p. 5.

[5] In her complaint, Neri alleges Stansbury failed to follow proper canine handling policies and procedures. The court was not provided a copy of these policies for review. As such, the court is unable to ascertain

than the ones utilized by Stansbury, namely a shorter leash and muzzle. Neri alleges that when Stansbury did not follow this restraint method, he violated her liberty interest. Dkt. No. 15, p. 6-8. This, however, does not identify a clearly established law violation which Stansbury would have been aware he was violating; Neri's allegations instead reference an unknown policy violation. "Merely referring to a constitutional or statutory right is not sufficient." *Berry v. Tex. Woman's Univ.,* 528 F.Supp. 3d 579, 590 (E.D. Tex 2021).

A court "must frame the [clearly established law question] with specificity and granularity." *Brown v. Tarrant Cty., Tex.,* 985 F.3d 489, 495 (5th Cir. 2021) (quoting *Morrow v. Meachum,* 917 F.3d 870, 874-75 (5th Cir. 2019). Neri pleads no legal precedent putting forth any line of cases clearly establishing her alleged constitutional right. The court finds no clearly established law that supports a liberty right that an officer must follow a policy requiring a police canine on a short leash and muzzle when interacting with public. Examining Stansbury's particular conduct of no muzzle and no short leash on Greg against the required clearly defined constitutional right, of which this court finds Stansbury could not be on any notice of any such right owed to Neri, the court finds he did not violate clearly established law.

Given the above, Stansbury is entitled to the protections of qualified immunity because there is no clearly established law that put him on notice that his conduct was unconstitutional. Accordingly, Stansbury's motion to dismiss for failure to state a claim should be granted.

### B. Violation of a Constitutional Right

If the court were to find a clearly established constitutional right owed to Neri in the first inquiry, Neri's still fails to defeat Stansbury's qualified immunity under the second inquiry. This, because Neri fails to prove that Stansbury's actions violate the alleged federal right.

---

whether said policy is the result of Neri's training on police dog handling or whether it represents an officially adopted and promulgated policy of the City of San Benito. Further, Neri does not claim a pattern of improper dog handling procedures equivalent to official policy such that it fairly represents municipal policy.

Viewing the facts in the light most favorable to Neri, Stansbury brought Greg to the veterinarian for follow-up medical care. Greg's general temperament was known to both Stansbury and Neri. When they arrived for care, Stansbury retrieved Greg from his vehicle and placed him on a long leash, approximately six feet in length. Greg was unmuzzled. Neri, noticing the alleged deficits in handling procedure by Stansbury, approached Greg to muzzle him. Neri came near enough to Greg to smell an odor emanating from his ear. It was during this approach that Greg lunged and injured her face. Stansbury was present to witness this event. Neri sustained damage to her face and right ear because of this incident.

To defeat a state actor's assertion of qualified immunity and succeed on a due process claim, the plaintiff must show the state actor's conduct was in violation a federal right. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In *County of Sacramento v. Lewis,* the Supreme Court noted that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (citing *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976 41. L.Ed.2d 935 (1974). The *Lewis* Court specifically highlighted that "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* At 846 (internal citation omitted). The *Lewis* Court, therefore, concluded that the "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 848, n.8. The "shock the conscience" standard therefore is used to determine if a governmental actor's conduct violates due process rights under the Fourteenth Amendment. *Id. at* 849.

The "shock the conscience" standard is satisfied when the "conduct [is] intended to injure in some way unjustifiable by any government interest." *Lewis* at 849. The *Lewis* Court went on to say it naturally follows that "when actual deliberation is practical," deliberate indifference to a risk of harm may, given the appropriate [factual] circumstances, be conscience shocking. *Lewis* at 851-54; see also *M.D. ex rel. Stuckenberg v. Abbott,* 907 F.3d 237, 251 (5th Cir. 2018).

"Deliberate indifference is more than negligence or even gross negligence." *Valle v. City of Houston,* 613 F.3d 536, 547 (5th Cir. 2010); *see Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 88 L.Ed. 2d 662 (1986) ("in §1983 suit, the plaintiff must still prove a violation of the underlying constitutional right; and depending on the right, merely negligent conduct may not be enough to state a claim."). Deliberate indifference requires that the state actor both knew of and disregarded an excessive risk to the victim's health and safety. *McClendon v. City of Columbia*, 305 F.3d 314, 326, n.8. (5th Cir. 2002).

Neri relies on a "shock the conscience" standard for her claim that Stansbury violated her substantive due process right to be free from bodily injury. However, "[t]he burden to show state conduct that shock the conscience is extremely high." *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys,* 675 F.3d 849, 868 (5th Cir. 2012) (citing *J.R. v. Gloria,* 593 F.3d. 73, 80 (1st Cir. 2010). In looking at Stansbury's intentional action of bringing Greg to the veterinarian on a long leash with no muzzle, there is no intentional act to injure pled by Neri. The court finds that Stansbury's actions in handling Greg do not rise to the level of an arbitrary action that is conscience shocking such that it is either egregious or outrageous.

Neri further argues that the risk resulting from his actions was, "obvious … given the training provided to [Stansbury]" but the fact "that Plaintiff trained "Greg" or somehow knew him was irrelevant." Dkt. No. 15, p. 7; Dkt. No. 19, p. 5. This argument fails to plead behavior that "shocks the conscience" as the court recognizes the common knowledge held by both Neri and Stansbury regarding appropriate dog handling procedure. Neri cannot meet the "shock the conscience standard" by merely asserting personal knowledge of Stansbury's alleged failure to adhere to her training while ignoring that she herself was the trainer.[6] Taking her pleadings as true, Greg's personal and training history were well known to Neri, yet she, as trainer and *not canine handler*, she drew her face close to the recuperating dog's snout despite the absence of a muzzle. The court finds

---

[6] At various times in her First Amended Original Complaint, Neri relies on the assertion that Stansbury was trained extensively. However, she also states, "[i]t must be noted that his *limited* experience in the use and handling of police canines came by and through the training provided him by Plaintiff and her father." Dkt. No. 15, p. 3-4 (emphasis added).

Stansbury's actions in failing to follow the training protocol of a short leash and muzzle do not rise to the level of an arbitrary action that shocks the conscience for its egregiousness or outrageousness.

Consequently, Neri must then defeat Stansbury's assertion of qualified immunity under a theory of deliberate indifference. Under this standard, Neri must show that Stansbury both knew of an excessive risk to Neri's person and disregarded that risk. *See McClendon* at 326. Neri must plead more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955); *See also Iqbal* at 679, 129 S.Ct. 1937 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).

Here, Neri alleges Greg's temperament was known to all parties, including herself as his former custodian. Dkt. No. 15, p. 3. While Neri affirmatively points to a previous biting incident in Chicago, Illinois, and the "inherent aggressiveness" of patrol dogs, she fails to identify any facts that would permit a reasonable inference of excessive risk to Neri with respect to Stansbury's handling of the dog on the date of the incident. Further, the dog is not alleged to have previously caused personal injury while in Stansbury's care, and there is no established pattern of police/patrol dogs under Stansbury's care causing personal injury. Neri fails prove Stansbury's actions amount to deliberate indifference, especially considering her own action in approaching Greg with her personal knowledge of Greg's past behavior. Neri's pleadings as they relate to Stansbury's alleged deliberate indifference fail to allege an excessive risk to Neri's person that Stansbury disregarded. Neri's pleadings do not allege acts of deliberate indifference by Stansbury to overcome his invocation of qualified immunity.

The court finds that Stansbury is entitled to the protections of qualified immunity because Neri fails to plead conscious shocking conduct by Stansbury that rises to the level of a violated due process right. Consequently, the court recommends Stansbury's motion to dismiss be granted for failure to state a claim upon which relief can be granted.

**VII.    Recommendation**

It is recommended that Defendant Rendell Stansbury's Motion to Dismiss be granted for failure to state a claim upon which relief can be granted as to Neri's federal claims under 42 U.S.C. § 1983. Dkt. No. 17. Stansbury is entitled to the protections of qualified immunity.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). This Report and Recommendation shall serve as notice of the Plaintiffs' procedural defaults, and the objection period shall serve as opportunity to respond to these defects. *Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on August 22, 2024.

_Karen Betancourt_
Karen Betancourt.
United States Magistrate Judge